**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **PENN TRAFFORD SCHOOL DISTRICT,** ) | |
| ) | |
| Plaintiff**,** ) | |
| ) | |
| **v.** ) | |
| ) | Civil Action No.: 04-1395 |
| **C.F. by and through his parents,** ) | |
| **M.F. and A.F.** ) | |
| ) | |
| Defendant**.** ) | |
| ) | |

**MEMORANDUM ORDER**

CONTI, District Judge

In this memorandum order, the court considers the motion for partial summary judgment filed by C.F., by and through his parents, M.F. and A.F. ("defendant"), the motion for summary judgment filed by Penn Trafford School District ("District" or "plaintiff") and defendant's motion for preliminary injunction in this civil action arising under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, et seq. ("IDEA") and section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.  After considering the parties' statements of material facts and responses thereto, the administrative record, and the respective motions and briefs submitted by the parties, the court will convert the defendant's motion for partial summary judgment into a motion for complete summary judgment and will grant the motion in part and deny the motion in part and the court will grant the plaintiff's motion in part and deny the plaintiff's motion in part.  The court will also deny defendant's motion for preliminary injunction.

## I.      Background

At all points relevant to this litigation, defendant C.F. was a student in the District, where

he attended school since he began kindergarten in the fall of 1998.  The parties do not dispute

that C.F. is disabled and is eligible federal and state special education programs.  The parties do

dispute that the District provided C.F. with a free appropriate public education (FAPE) from

1998-2004.

Since as early as August 1998, C.F. exhibited numerous developmental delays and was

diagnosed with pervasive developmental disorder ("PDD").  Plaintiff's Concise Statement of

Material Facts ("P.S.F.") ¶ 4.  C.F. received specialized preschool services from the

Westmoreland County Intermediate Unit Occupational Therapy Program before he began

kindergarten in the District. P.S.F. ¶ 7,9.  The parties dispute whether C.F. was enrolled in

specialized educational services during the school year 1998-99.  P.S.F. ¶ 16.

In 2000, the Children's Hospital of Pittsburgh issued a neurodevelopment evaluation

report that reported that C.F. had a verbal IQ of 67, a performance IQ of 59 and a full scale IQ of

60 based on the Wechsler Intelligence Scale for Children-III ("WISC-III").  P.S.F. ¶ 14.  During

the 2001-02 school year, the District presented C.F.'s parents with two proposed individual

educations programs ("IEPs").  P.S.F. ¶ 18.  In February 2002, the District presented a

"permission to evaluate" form that named several tests that were to be used in a proposed re-

evaluation of C.F.  P.S.F. ¶ 21.  C.F.'s parent's objected to the proposed evaluation.  P.S.F. ¶ 22.

On March 5, 2002, the District proposed an IEP to C.F.'s parents.  P.S.F. ¶ 24.  The parties

dispute whether the proposed IEP met certain criteria provided for in the IDEA.  P.S.F. ¶ 26-36.

In August 2002, the District performed a reevaluation of C.F.'s "need for continued support services."  P.S.F. ¶ 39.  Results on the WISC-III showed scores of a verbal IQ of 69, a performance IQ of 46 and a full-scale IQ of 53, a substantial decrease from the 2000 test.  P.S.F. ¶ 44.  The reevaluation report categorized C.F.'s disabilities as having mild mental retardation and pervasive developmental disability NOS and concluded that concluded that C.F. was eligible for and in need of special education services.  P.S.F. ¶ 49-50.  The reevaluation recommended, inter alia, repetitive instructional keyboarding using frequent motoric memory skills and strategies, reading of test materials, allowing verbal responses to classroom assessments and specific instructional methods in mathematics, handwriting and integration into the regular education program.  P.S.F.  ¶ 51.

A team met on September 23, 2002, at the beginning of C.F.'s fourth grade school year, and proposed an IEP, which C.F.'s parents rejected.  P.S.F. ¶ 53.  On November 6, 2002, the IEP team presented another proposed IEP, the pendent IEP, which C.F.'s parents did accept.  P.S.F. ¶ 63-64.  The November 2002 IEP included annual goals and short-term goals related to C.F.'s performance in mathematics, language arts and spelling, handwriting, communication, organization, science, social studies, reading, and language content.  P.S.F. ¶ 66-71, 75.  The parties do not dispute the content of the November 2002 IEP, but do dispute whether these goals were sufficiently specific and measurable to provide C.F. with a free appropriate public education.   The November IEP also described specific and individualized program modifications and specially designed instruction.  P.S.F. ¶ 72.

On April 16, 2003, C.F. had Dr. Margaret Kay and Associates privately evaluate C.F.  P.S.F. ¶ 98.  Dr. Kay rejected the conclusion that C.F. was mildly mentally retarded and instead

concluded that he had specific learning disabilities in reading comprehension, math reasoning, math calculation and written expression.  Independent Evaluation at 29-30.  C.F.'s parents did not share the results of the evaluation with the District until after they filed for due process.  P.S.F. ¶ 100.

In May 2003, C.F.'s IEP team met again to revise C.F.'s IEP and proposed a new IEP for C.F..  P.S.F. ¶ 81.  C.F.'s parents rejected the May 2003 proposed IEP. P.S.F. ¶ 82.  On July 25, 2003, the parents requested a special education due process hearing to address whether C.F. had received a FAPE.  P.S.F. ¶ 101.

The hearing lasted months from September 2003 through May 2004.  In a March 25, 2004 Decision/Order, the hearing officer held that a one year statute of limitations applied to C.F.'s claims and that there were no mitigating circumstances to warrant adding another year to the statute of limitations.  P.S.F. ¶ 112.  The state Appeals Panel upheld this ruling on May 13, 2004. P.S.F. ¶ 114.  On May 19, 2004, the hearing officer issued an order in which she concluded that the District had provided C.F. with an FAPE for the 2002-03 school year, that the proposed IEP was appropriate, that the District did not need to compensate C.F.'s parents for the cost of the independent evaluation and that the District did not discriminate against the student.  Hearing Opinion at 25-36.

On July 14, 2004, the Appeals Panel reversed the May 19, 2004 decision in part, concluding that the District's evaluation of August 2002 was flawed, the IEPs of November 2002 and May 2003 were flawed and C.F. was entitled to compensatory education for the 2002-03 and 2003-04 school years.  Appeals Panel Decision ("A.D.") at 5-8.  The Appeals Panel affirmed the hearing officer's conclusions that a one year statute of limitations applied to C.F.'s claims and

4

that the District did not need to compensate C.F.'s parents for the cost of the independent evaluation. Id. at 8-10.

On August 14, 2004, the District filed a petition for review of the Appeals Panel decision in the Commonwealth Court of Pennsylvania. (Doc. No. 1, ex. A).   On September 10, 2004, defendant filed a notice of removal in this court pursuant to 28 U.S.C. § 1441 on the basis of federal question jurisdiction, 28 U.S.C. § 1331.

**II.____Standard of Review**

The motions before the court are cross-motions for summary judgment, although they are essentially appeals of the Appeals Panel's decision.  Any party aggrieved by the decision made under the IDEA by a state educational agency has a right to bring a civil action in state or federal court. 20 U.S.C. § 1415(i)(2)(A). This court has jurisdiction over those actions "without regard to the amount in controversy."  20 U.S.C. § 1415(i)(3)(A).

The court reviewing the administrative action "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate."  20 U.S.C. § 1415(i)(2).  Thus, a court reviewing a state agency decision under the IDEA does not adopt the traditional summary judgment standard of review. See, e.g., Bucks County Dep't of Mental Health/Mental Retardation v. De Mora, 227 F.Supp.2d 426 (E.D.Pa.2002).  This standard also differs from the usual standard for review of agency actions. See Susan N. v. Wilson School Dist., 70 F.3d 751, 757 (3d Cir. 1995) ("'[J]udicial review in IDEA cases differs substantively from judicial review in other agency actions, in which the courts are generally confined to the administrative record and are held to a highly deferential

standard of review.'" (quoting Ojai Unified Sch. Dist. v. Jackson, 4 F.3d 1467, 1471 (9th Cir.1993)).

In IDEA cases, district courts are required to give "due weight" to the factual findings in state administrative proceedings. Bd. of Educ. v. Rowley, 458 U.S. 176, 206 (1982).  The United States Court of Appeals for the Third Circuit further defined "due weight" as "modified de novo" review.  S.H. v. State-Operated Sch. Dist., 336 F.3d 260, 270 (3d Cir. 2003).  Under this modified de novo review, "'a district court is required to make findings of fact based on a preponderance of the evidence contained in the complete record, while giving some deference to the fact findings of the administrative proceedings.'" Id. (quoting Knable v. Bexley City Sch. Dist., 238 F.3d 755, 764 (6th Cir.2001)).  Further, "'[f]actual findings from the administrative proceedings are to be considered prima facie correct,'and '[i]f a reviewing court fails to adhere to them, it is obliged to explain why.'" Shore Reg'l High Sch. Bd. of Educ. v. P.S., 381 F.3d 194, 199 (3d Cir.2004) (quoting S.H., 336 F.3d at 271). Where, as here, the conclusions of the local hearing officer and Appeals Panel differ, "due weight" to the administrative proceedings generally requires deference to the Appeals Panel and not the hearing officer.  Carlisle Area Sch. v. Scott P., 62 F.3d 520, 529 (3d Cir. 1995).

After evaluating all of the evidence according to the modified de novo review, this court will grant summary judgment if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  A motion for summary judgment will not be defeated by the mere existence of some disputed facts, but will be defeated

when there is a genuine issue of material fact.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986).  In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the non-moving party.  Id. at 249.

The court may consider any material or evidence that would be admissible or usable at trial in deciding the merits of a motion for summary judgment.  Horta v. Sullivan, 4 F.3d 2, 8 (1st Cir.1993) (citing 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2721 at 40 (2d ed. 1983)); Pollack v. City of Newark, 147 F.Supp. 35, 39 (D.N.J.1956), aff'd, 248 F.2d 543 (3d Cir.1956) ("[I]n considering a motion for summary judgment, the court is entitled to consider exhibits and other papers that have been identified by affidavit or otherwise made admissible in evidence.") (emphasis added).  Inferences are to be drawn in the light most favorable to the non-moving party. Pa. Prot. & Advocacy, Inc. v. Pa. Dept. of Welfare, 402 F.3d 374, 379 (3d Cir.2005) ("We are required to review the record and draw inferences in a light most favorable to the non-moving party, . . . yet the non-moving party must provide admissible evidence containing 'specific facts showing that there is a genuine issue for trial.'")(quoting Fed. R. Civ. P. 56(e)).

## III.    Analysis

A.      Conversion of motion for partial summary judgment into motion for complete summary judgment

District courts are entitled to grant summary judgment sua sponte.  See Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986) ("[D]istrict courts are widely acknowledged to possess the

power to enter summary judgments *sua sponte,* so long as the losing party was on notice that she

had to come forward with all of her evidence.").   A district court may not grant summary

judgment *sua sponte* unless the court gives notice and an opportunity to oppose summary

judgment. See Otis Elevator Co. v. George Washington Hotel Corp., 27 F.3d 903, 909-10 (3d

Cir.1994).   In the present case, the District filed its own motion for summary judgment with

respect to <u>all</u> issues and responded to defendant's motion for partial summary judgment.   The

District clearly was on notice that it could be subject to summary judgment on <u>all</u> issues and had

adequate opportunity to present relevant facts relating to all issues in its own motion for

summary judgment.

   This memorandum order is notice that defendant's motion for partial summary judgment

will be converted into a motion for complete summary judgment.   The District may file an

opposition no later than ten days after the entry of this memorandum order.   Failure to file an

opposition to this memorandum order within that time shall result in this memorandum order

becoming final in all respects.

B.  <u>Statute of Limitations</u>

   Defendant argues that the Appeals Panel erred in failing to consider evidence concerning

whether C.F. was entitled to compensatory education for alleged acts or omissions of the District

that occurred prior to July 2002, one year prior to the time that defendant filed for due process.

The Appeals Panel reasoned that <u>Montour School District v. S.T.</u>, 805 A.2d 29 (Pa. Commw. Ct.

2002), established a one year "statute of limitations,"[1] barring defendant's claims that arose from

---

[1] Though the <u>Montour</u> court used the term "statute of limitations," 805 A.2d at 40, this
court concluded that the issue is better characterized as an equitable limit on compensatory
education. See <u>Michael C. ex rel. George C. v. Wissahickon Sch. Dist.</u>, 2005 WL 2739418, *1

alleged acts or omissions of the District that occurred prior to June 2002.  Federal court precedent and the goals of the IDEA contradict the holding in Montour and thus this court will remand the case for consideration of whether the District provided C.F. with a FAPE from 1998-2002.

In Montour, the Pennsylvania Commonwealth Court concluded that there should be a one year limit on awards of compensatory education, relying on Bernardsville Bd. of Educ. v. J.H., 42 F.3d 149 (3d Cir.1994).  In Bernardsville, the court of appeals concluded that parents of a disabled child who had been placed in a private school could seek tuition reimbursement for the private education if the school district had failed to provide the child with a FAPE, but that the amount of reimbursement would depend on whether the parents gave the school district an opportunity to modify the IEP.  Id. at 157.  To give a district an opportunity to modify, parents must initiate "review proceedings within a reasonable time of the unilateral placement for which reimbursement is sought."  Id. at 158.  The court further defined a "reasonable time" as "two years, indeed, more than one year, without mitigating excuse."  Id.

The Montour court applied the Bernardsville equitable limit on tuition reimbursement to claims for compensatory education, concluding that "initiation of a request for a due process hearing must occur within one year, or two years at the outside (if the mitigating circumstances show that the equities in the case warrant such a delay), of the date upon which a parent accepts a proposed IEP."  Montour, 805 A.2d at 40.

The United States Court of Appeals for the Third Circuit, however, rejected the application of an equitable period of limitation to claims for compensatory education.  In M.C. v.

n.2 (E.D.Pa.  Oct. 24, 2005).

Central Regional School Dist., 81 F.3d 389 (3d Cir.1996), the court held that a district "that knows or should know that a child has an inappropriate IEP or is not receiving more than a *de minimis* educational benefit must correct the situation.  If it fails to do so, a disabled child is entitled to compensatory education <u>for a period equal to the period of deprivation</u>."  <u>Id.</u> at 397 (emphasis added).  In reaching this decision, the court of appeals reasoned that "a child's entitlement to special education should not depend on the vigilance of the parents."  <u>Id.</u>  The court of appeals further noted that it had previously upheld an award of compensatory education of two-and-one-half years.  <u>Id.</u> at 396 (citing <u>Lester H. v. Gilhool</u>, 916 F.2d 865, 873 (3d Cir.1990)).

Parents do not have the same rights as their disabled children under the IDEA.  <u>See, e.g.</u>, <u>Collinsgru v. Palmyra Bd. of Educ.</u>, 161 F.3d 225, 227 (3d Cir.1998) ( "Congress's decision to endow parents with these procedural rights [under the IDEA] should not be read, under the language of the IDEA, to imply that parents also possess the same underlying substantive rights that their children possess.").  While the right to reimbursement belongs to the parents, the right to compensatory education belongs to the disabled child and thus it is appropriate that an equitable period of limitations apply to enforcement of the parents' rights, but not to enforcement of the child's rights.

The court of appeals further examined the issue of potential limitations on the right to compensatory education in <u>Ridgewood Bd. of Educ. v. N.E.</u>, 172 F.3d 238 (3d Cir.1999).  The court held that "a disabled student's right to compensatory education accrues when the school knows or should know that the student is receiving an inappropriate education."  <u>Id.</u> at 250.  In <u>Ridgewood</u>, the child's disabilities first surfaced in 1988 and the parents asked the school district

10

to evaluate him at that point.  Id. at 243.  The parents alleged that the district did not adequately respond to the child's disabilities until 1996, when the parents sought a due process hearing.  Id. at 243-45.  The court rejected the school district's argument that all compensatory education claims more than two years old were barred, noting that any statute of limitations on IDEA actions did not begin running until the state administrative review process was complete.  Id. at 250 (citing Jeremy H. v. Mount Lebanon Sch. Dist., 95 F.3d 272, 280 (3d Cir.1996)).

The Montour court considered Ridgewood and distinguished it because the limitation issue in Ridgewood was the time within which a parent may file a civil suit under the IDEA, and the limitation at issue in Montour was the time within which a parent must seek a due process hearing.  Montour, 805 A.2d at 38.  This distinction is irrelevant, as both decisions involved enforcement of a child's right to compensatory education, not the parents' right to reimbursement.  The right to compensatory education belongs to the child and should not be deprived based upon the parents' inaction.  See, e.g., Amanda A. v. Coatesville Area Sch. Dist., Civ.A.No. 04-4184, 2005 WL 426090 at *6 (E.D.Pa. Feb.23, 2005) (noting that "imposing an equitable limitation on [a student's] claim for compensatory education for the years in which she did not receive a FAPE, but during which her parents chose to work with the School District rather than request a due process hearing, would effectively punish her for her parents' lack of vigilance, a result expressly forbidden by both M.C. and Ridgewood").

A federal court is not bound to follow a state court's interpretation of federal law.  United States v. Bedford, 519 F.2d 650, 653 n. 3 (3d Cir.1975); see RAR Inc. v. Turner Diesel, Ltd., 107 F.3d 1272, 1276 (7th Cir.1997) ( "Although state court precedent is binding upon us regarding issues of state law, it is only persuasive authority on matters of federal law."); Grantham v.

Avondale Indus., Inc., 964 F.2d 471, 473 (5th Cir.1992) ("It is beyond cavil that we are not bound by a state court's interpretation of federal law regardless of whether our jurisdiction is based on diversity of citizenship or a federal question.").

This court concludes, as has every other district court in the Third Circuit that has considered the question, that there is no equitable limitation on compensatory education. See, e.g., Jonathan H. v. Elizabeth Forward Sch. Dist., No. 03-1996 (W.D. Pa. March 4, 2004) (applying Ridgewood over Bernardsville and refusing to apply time limit on requests for compensatory education); Amanda A., 2005 WL 46090, at *6 ("[T]here is no limitations period, whether equitable or legal, on a disabled child's claim for compensatory education pursuant to the IDEA."); Jonathan T. v. Lackawanna Trail Sch. Dist., 2004 WL 384906, at *2 (M.D.Pa. Feb.26, 2004); Kristi H. v. Tri-Valley Sch. Dist., 107 F.Supp.2d 628, 633-34 (M.D.Pa.2000).

The court need not consider whether the Pennsylvania Minority Tolling Statute, 42 PA. CONS. STAT. ANN. § 5533(b), applies to a claim for compensatory education brought under the IDEA or what statute of limitations would be applicable.  The statute of limitations did not begin to run until July 14, 2004, when the Appeals Panel issued its decision. See Ridgewood, 172 F.3d at 251.  The District  filed its petition for review in the Pennsylvania Commonwealth Court on August 13, 2004 and defendant filed his counterclaim in this court on December 10, 2004.  The parties do not allege that a statute of limitations of less than five months could apply to defendant's claims and thus this court need not determine what statute of limitations would be applicable, if any, or whether C.F.'s age affects the tolling of the statute.

C.     Whether the District provided C.F. with a FAPE

Under the IDEA and section 504 of the Rehabilitation Act, states must provide every disabled or handicapped student within their jurisdictions with a FAPE in the least restrictive educational environment appropriate to the needs of the student.  20 U.S.C. §§ 1412(a)(1) and 1412(5); 34 C.F.R. § 104.33(a).  The main vehicle for provision of a FAPE under the IDEA is the IEP.  See S.H., 336 F.3d at 264.  The IEP takes the form of a detailed written statement summarizing the child's abilities, outlining the goals for the child's education, and specifying the services the child will receive.  20 U.S.C. § 1414(a).  A multi-disciplinary team including the child's parents, both regular and special education instructors, a representative of the local educational agency, specialists, and other individuals with relevant knowledge creates the IEP. 20 U.S.C. § 1414(b).  The IEP must include, among other things, a measure of the child's current level of educational performance, annual goals for the child, measurable immediate steps or major milestones to monitor progress, specific educational services to be provided, and a statement of the extent to which the child will participate in regular educational programs. 34 C.F.R. § 300.347.

In order to provide a student with FAPE, an IEP must be "reasonably calculated to enable the child to receive educational benefits."  Rowley, 458 U.S. at 206-07.   In Polk v. Central Susquehanna Intermediate Unit 16, 853 F.2d 171 (3d Cir.1988), the United States Court of Appeals for the Third Circuit held that the IDEA "calls for more than a trivial educational benefit," and further explained that an appropriate IEP should provide "significant learning" to and confer "meaningful benefit" upon a student.  Id. at 180-84.

13

The Appeals Panel determined that the IEP of November 2002 failed to provide C.F. with a FAPE because "the annual goals, the short-term objectives, and the specially designed instructions are flawed."  (Doc. No. 1 ex. A).  After reviewing the administrative record and giving due weight to the factual findings of the state agency, this court concludes that the Appeals Panel correctly determined that C.F. did not receive a FAPE during the 2002-03 and 2003-04 school years.

First, the November 2002 IEP's short-term instructional objectives are not sufficiently specific. Vague statements like "[C.F.] will write a correct sentence"; "[C.F.] will improve the rate he writes" with 80% accuracy; and "[C.F.] will complete the work necessary to be successful in fourth grade science" with 70% accuracy are so vague that they provide no meaningful guidance for C.F.'s educational program.  See, e.g., Larson ex rel. Larson v. Indep. Sch. Dist. No. 361, Nos. Civ. 02–3611, Civ. 02-4095, 2004 WL 432218, at *12 (D.Minn. Mar. 2, 2004) (holding that short-term objectives were too vague where, "[t]he short-term objectives provide that the objectives will be met according to certain percentages, but the short-term objectives do not provide objective criteria against which achievement can be measured"); Evans v. Bd. of Educ., 930 F.Supp. 83, 97 (S.D.N.Y. 1996) (noting that vague measurements such as "80% success," "fail[] to specify strategies for adequately evaluating [a student's] academic progress and determining which teaching methods are effective and which need to be revised").

Second, the November 2002 IEP did not provide measurable annual goals.  As the Appeals Panel concluded, measuring annual goals in terms of grade equivalencies is inadequate. Goals such as "[C.F.] will complete the fourth grade curriculum in the areas of science, social studies and reading" and "[C.F.] will improve his organization skills so that he fulfills expected

14

levels of achievement attached to short-term objectives" do not provide an objectively measurable basis for tracking C.F.'s progress.  "Completing" a curriculum is an extremely vague goal for a developmentally disabled child and does not provide sufficient guidance for providing a FAPE.

Finally, the November 2002 IEP failed to provide a behavior management plan even though the record reflects that C.F. has behavioral issues.  This is a serious omission.  See Neosho R-V School Dist. v. Clark, 315 F.3d 1022, 1028 (8th Cir. 2003) (finding that a student did not receive a FAPE where the IEP failed to provide an adequate behavior management program).

The May 2003 IEP further revealed the flaws of the November 2002 IEP.  In the May 2003 IEP, the percentage accuracy of many of the expected levels of achievement were reduced from their levels in the November 2002 IEP.  As the Appeals Panel noted, this is implicit evidence that the November 2002 IEP did not confer C.F. with a meaningful educational benefit as the IDEA requires.

The failures of the November 2002 IEP are in many ways related to the failures of the District's August 2002 evaluation report.  Federal law requires that an evaluation use "[t]ests and other evaluation materials . . . tailored to assess specific areas of educational need" and that a child be "assessed in all areas related to the suspected disability."  34 C.F.R. § 300.532(b, f).  In Warren G. ex rel. Tom G. v. Cumberland County Sch. Dist., 190 F.3d 80 (1999) (3d Cir. 1999), the United States Court of Appeals for the Third Circuit found that two students evaluations were deficient where they failed to uncover certain areas of the children's learning disabilities.  Id. at 87.  The court reasoned that "the inappropriateness of the District's evaluation is further

15

demonstrated by the fact that it was the parents' evaluator who identified the boys' specific problem areas." Id. In the present case, the extensive independent evaluation revealed that C.F. was not mildly mentally retarded but suffered from specific learning disabilities in a few areas and the District evaluation failed to uncover these problem areas. As the Appeals Panel noted, the evaluation report was clearly deficient as it failed to evaluate any curriculum-based measures of a student who demonstrated specific problems in those areas.

The preponderance of the evidence in the administrative record supports the Appeals Panel's conclusion that the November 2002 IEP did not provide C.F. with a FAPE during the 2002-02 and 2003-04 school years. The parties do not dispute the contents of this IEP and thus there does not remain any genuine issue of material fact with respect to this issue.

D.      Section 1983

Section 1983 provides a private right of action for IDEA violations. See W.B. v. Matula, 67 F.3d 484, 494 (3d Cir.1995). In order to recover under section 1983 against the District, however, defendant "must establish that the deprivation of [his] rights was the result of an official policy or custom." Ridgewood, 172 F.3d at 252. Defendant did not provide any evidence that the alleged IDEA violation was the result of an official policy or custom. Thus, plaintiff's motion for summary judgment will be granted as to defendant's section 1983 claims against the District.

E.      Whether C.F. is entitled to an award of compensatory education

A disabled student is entitled to a FAPE until he or she reaches age twenty-one. 20 U.S.C. § 1412(2)(b). Compensatory education may be awarded for any deprivation of a FAPE and requires a school district to provide education past a child's twenty-first birthday to make up

for any earlier deprivation.  M.C., 81 F.3d 389 at 395.  "When an IEP fails to confer some (i.e.,

more than *de minimis*) educational benefit to a student, that student has been deprived of the

appropriate education guaranteed by IDEA" and compensatory education is appropriate.  Id. at

396.  As discussed above, the November 2002 IEP failed to confer any meaningful educational

benefit on C.F.  Thus, C.F. is entitled to compensatory education for the period of the

deprivation, the 2002-03 and 2003-04 school years.

F.      Reimbursement for the Independent Medical Evaluation

        Plaintiff also argues that defendant is not entitled to be reimbursed for the independent

medical evaluation.  As defendant acknowledges, this issue was not raised for review by this

court.  Defendant's Response to Plaintiffs' Motion for Summary Judgment at * 14.  In any event,

the District does not need to reimburse defendant for the cost of the independent evaluation.

        A parent may obtain an independent educational evaluation "at public expense if the

parent disagrees with an evaluation obtained by the public agency."  34 C.F.R. § 300.502(b)(1).

To be entitled to reimbursement, though, parents must specifically disagree with evaluation

report.  See Lauren W. ex rel. James W. and Jean W. v. DeFlaminis, No. Civ.A. 03-CV-1526,

2005 WL 1353643, (E.D.Pa. June 1,2005).  In Lauren W, the court held that the parents had not

disagreed with the report, and thus were not entitled to reimbursement, where they checked "yes"

and signed the evaluation.  Id. at *12.  In the present case, both parents signed and checked yes

on the evaluation form and thus defendant is not entitled to compensation for an independent

evaluation.

G.    Motion for Preliminary Injunction

Defendant argues that he is entitled to a preliminary injunction granting C.F. "funding for his compensatory education during the pendency" of judicial proceedings.  (Defendant's Motion for Preliminary Junction at 5.)  Defendant claims that he is entitled to compensatory education under the IDEA's "stay put" provision, which requires that "[d]uring the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of such child."  20 U.S.C. § 1415(j).  The purpose of the "stay put" provision is "to strip schools of the *unilateral* authority they had traditionally employed to exclude disabled students, particularly emotionally disturbed students, from school."  Honig v. Doe, 484 U.S. 305, 323 (1988) (emphasis in original).  The "stay put" provision "represents Congress' policy choice that all handicapped children, regardless of whether their case is meritorious or not, are to remain in their current educational placement until the dispute with regard to their placement is ultimately resolved." Drinker v. Colonial Sch. Dist., 78 F.3d 859, 864-65 (3d Cir.1996) (citing Woods v. New Jersey Dep't of Educ., No. 93-5123, 20 Indiv. Disabilities Educ. L. Rep. 439, 440 (3d Cir. Sept. 17, 1993)).  It "functions, in essence, as an automatic preliminary injunction."  Drinker, 78 F.3d at 864 (citing Zvi D. v. Ambach, 694 F.2d 904, 906 (2d Cir.1982)).

Compensatory education is not C.F.'s "then-current educational placement" and thus may not be enforced by a preliminary injunction issued pursuant to IDEA's "stay put" provision.  In cases where the parents object to a school district's unilateral decision to change a child's educational program, "the dispositive factor in deciding a child's 'current educational placement' should be the Individualized Education Program  . . . actually functioning when the 'stay put' is

invoked." Drinker, 78 F.3d at 867.  In cases where parents have unilaterally decided to remove their child from public school and place the child in private school pending the outcome of IDEA litigation, the "current educational placement" may be the private school if the state administrative agency determines that the "IEP which [the school district] proposed . . . was inadequate and . . . the private school placement was appropriate." Susquenita Sch. Dist. v. Raelee S., 96 F.3d 78, 83 (3d Cir. 1996).  In the latter case, "the State or local educational agency and the parents [have] otherwise agree[d]" that the private school is the appropriate placement and thus the school district must fund that placement pending the outcome of all IDEA litigation.  Id.

In the present case, there was no "agreement" between the parents and the state agency that some other placement was appropriate for C.F.  The Appeals Panel only ruled that the November 2002 IEP was inadequate, not that some other placement was adequate.  The Appeals Panel awarded compensatory education, but compensatory education is not a "placement" within the meaning of section 1415(j).  Compensatory education is an equitable remedy designed to address a past denial of FAPE.  See, e.g., Bucks County Dept. of Mental Health/Mental Retardation v. Pennsylvania, 379 F.3d 61, 72 (3d Cir. 2004) (noting that an "'appropriate' remedy [for denial of FAPE] encompasses the power of a court to order school authorities to provide compensatory education to a child").

C.F. is entitled to compensatory education, but compensatory education is not C.F.'s current educational placement for purposes of section 1415(j) and thus may not be enforced by a preliminary injunction pursuant to that provision.

**IV.     Conclusion**

_____For the foregoing reasons, defendant's motion for summary judgment will be granted in full.  Plaintiff's motion for summary judgment will be denied with respect to the issues whether the Appeals Panel correctly concluded that C.F. was not entitled to compensatory education before July 2002, whether the Appeals Panel erroneously concluded that C.F. did not receive a FAPE during the 2002-03 and 2003-04 school years, whether the Appeals Panel erroneously concluded that the District's evaluation report was not adequate and whether the Appeals Panel erroneously concluded that C.F. is entitled to compensatory education.  Plaintiff's motion for summary judgment will be granted with respect to defendant's section 1983 claim and the claim that defendant is not entitled to reimbursement.  Defendant's motion for preliminary injunction will be denied.  The case will be remanded to the state agency to determine whether C.F. was deprived of a FAPE from 1998 through 2002.

## **ORDER**

Now, this 28th day of March, 2006, upon consideration of the parties' submissions it is ordered that:

1.  Defendant's Motion for Partial Summary Judgment on the Record (Doc. No. 21) is **GRANTED**.

2.  Plaintiff's Motion for Summary Judgment (Doc. No. 17) is **DENIED** in part and **GRANTED** in part as follows:

a)      **DENIED** with respect to

(i) the issue whether the Appeals Panel correctly concluded that C.F. was not entitled to compensatory education before July 2002;

(ii) the issue whether the Appeals Panel erroneously concluded that C.F. did not receive a FAPE during the 2002-03 and 2003-04 school years;

(iii) the issue whether the Appeals Panel erroneously concluded that the District's evaluation report was not adequate; and

(iv) the issue whether the Appeals Panel erroneously concluded that C.F. is entitled to compensatory education.

b)      **GRANTED** with respect to

(i) the claim that defendant failed to state a claim under 42 U.S.C. § 1983; and

(ii) the claim that defendant is not entitled to reimbursement for the independent evaluation.

21

3.  Defendant's Motion for Preliminary Injunction and Declaratory Relief (Doc. No. 9) is

**DENIED**.

4.  This case is **REMANDED** to the Pennsylvania Board of Special Education to

determine whether C.F. was deprived of a FAPE from 1998 through 2002.

The clerk is directed to mark this case as closed.

By the court:


/s/ Joy Flowers Conti

Joy Flowers Conti

United States District Judge


cc:      Counsel of Record

22